115   101
c132   605

---

ANTHONY MILLER, Appellant, v. MARTIN EVANS, Sheriff.

Satisfaction of Sentence: DELAY IN SERVING MITTIMUS. Defendant was sentenced to pay a fine, and, on omission to do so, to stand committed to the county jail for 90 days. The sheriff neglected to execute the mittimus until after the term of defendant's incarceration would have expired if begun on the day of judgment. *Held,* that the expiration of the time without imprisonment would not be considered in satisfaction of the judgment,— the time at which the sentence is to be carried out being directory, and not a part of the judgment,—and a subsequent commitment to jail was authorized.

*Appeal from Linn District Court.*—HON. WM. G. THOMPSON, Judge.

WEDNESDAY, DECEMBER 18, 1901.

THE petitioner on the twenty-second day of November, 1899, was sentenced "to pay a fine of $300 and costs of prosecution, and stand committed to the jail of Linn county, Iowa, for a period of ninety days, unless said fine is sooner paid." Mittimus was not issued until January 2, 1900,

and not served by the sheriff taking him into custody until February 22, 1900. He was brought before the court on writ of habeas corpus February 28, 1900, and, upon hearing, was remanded to the custody of the sheriff, and his petition dismissed. The petitioner appeals.—*Affirmed.*

*Heins & Heins* for appellant.

No appearance for appellee.

LADD, J.—Though the petitioner was sentenced November 23, 1899, to pay a fine, and, on omission so to do, to stand committed to the county jail for a period of 90 days, mittimus was not issued until January 2, 1900, and the defendant not taken into custody by the sheriff until February 22d following, or after the term of his incarceration would have expired if begun on the day of judgment. He was present in court when sentence was pronounced, and remained in the county during the entire period, interposing no obstacle to carrying out the sentence. There appears to have been no excuse whatever for the delay of the officer. Section 5443 of the Code requires that "when a judgment of imprisonment, either in the penitentiary or county jail, is pronounced, an execution, consisting of a certified copy of the entry therof in the record book, must be forthwith furnished to the officer whose duty it is to execute the same, who shall proceed and execute it accordingly, and no other warrant or authority is necessary to justify or require its execution." It was undoubtedly the duty of the clerk to issue mittimus, and of the sheriff to execute the same promptly upon the rendition of judgment; but can it be said that the neglect of these officers shall defeat the very object of the prosecution, i. e. punishment for violation of the criminal laws? The right to suspend sentence after being pronounced is denied the courts of this state. *State v. Voss,* 80 Iowa, 467. And this seems now to be the prevailing rule. *Neal v. State,* 104 Ga. 509 (30 S. E. Rep.

858, 42 L. R. A. 130, 69 Am. St. Rep. 175); *In re Webb,* 89 Wis. 354 (62 N. W. Rep. 177, 27 L. R. A. 356, 46 Am. St. Rep. 846); *State v. Murphy,* 23 Nev. 390 (48 Pac. Rep. 628); *In re Markuson,* 5 N. D. 147 (64 N. W. Rep. 939). Contra: *Weber v. State,* 58 Ohio St. 616 (51 N. E. Rep. 116, 41 L. R. A. 472); *Fults v. State,* 2 Sneed, 232; *State v. Crook,* 115 N. C. 763 (20 S. E. Rep. 514, 29 L. R. A. 260). See, also, *People v. Court of Sessions of Monroe Co.,* 141 N. Y. 288 (36 N. E. Rep. 386, 23 L. R. A. 856). Whatever justification the hardships resulting from the peculiar rules of the common law may have furnished for such a practice, all excuse for it disappeared with the enactment of statutes affording full opportunity for the correction of errors, and giving the courts a discretion apparently wide enough to meet the hardest cases. The authority "to grant reprieves, commutations and pardons, after convictions for all offenses, except treason and cases of impeachment," is by the constitution lodged in the governor; and an order by a court suspending judgment after being entered, save for purposes of appeal, is clearly obnoxious to the objection that it is an attempted exercise of power not judicial, but vested in the executive. Section 16, article 4, Constitution of Iowa. But, if petitioner's contention be accepted, the officers of the court may accomplish by delay that which the court itself is powerless to do. Aye, more; for, while the court could not postpone the penalty of the law denounced against the offender, its officers might by procrastination wholly obviate and prevent punishment. *In re Webb,* 89 Wis. 354 (62 N. W. Rep. 177, 27 L. R. A. 356, 46 Am. St. Rep. 846), relied on by appellant, is not precisely like the case at bar in its facts; for there the prisoner was actually in custody, and when, at his request, the sentence was suspended, he was allowed his liberty. The order of suspense was adjudged to be in excess of the court's authority, and the term of imprisonment held to have begun *eo instante* upon the entry of judgment, and to have termi-

nated at the end of the period fixed therein, although the prisoner had not been incarcerated an instant of that time. A like conclusion was reached *In re Markuson,* 5 N. D. 147 (64 N. W. Rep. 939). In both cases, however, this conclusion seems to have been treated as a necessary result of declaring the order suspending the sentence illegal. We are unable to discover any reason for allowing the convict to thus profit by a delay to which he has assented, or in which he has acquiesced without objection. The time at which the sentence is to be carried out is ordinarily directory only, and forms no part of the judgment of the court. *State v. Cockerham,* 24 N. C. 204; 19 Enc. Pl. & Prac. p. 480; *Ex parte Bell,* 56 Miss. 282; *Dolan's Case,* 101 Mass. 219; *Hollon v. Hopkins,* 21 Kan. 638. In the last case it was said that: "The time fixed for executing a sentence, or for the commencement of its execution, is not one of its essential elements, and, strictly speaking, it is not a part of the sentence at all. The essential portion of the sentence is the punishment, including the kind of punishment, and the amount thereof, without reference to the time when it is to be inflicted." It was also observed that "the only way of satisfying a judgment judicially is by fulfilling its requirements;" and, in *Dolan's Case,* that "expiration of time without imprisonment is in no case an execution of the sentence." This cannot be waived, as here claimed, by the officers of the court, whose duties with respect to its judgments are purely ministerial. The time for its execution was not of the essence of the judgment, unless the prisoner, by demanding that it be immediately carried out, made it such. It was his duty to surrender himself and submit to the penalty of the law, as well as that of the sheriff to inflict it; and, by taking advantage of the neglect of the latter and of the clerk, he cannot avoid the punishment which his wrongdoing will be assumed to have justly required. In *Neal v. State, supra,* a sentence of six months' work in the chain gang was ordered suspended. At a subsequent term of court, after the

lapse of six months, it was ordered that the sentence be en-
forced. The prisoner contended that, as the order of sus-
pension was illegal, the period of imprisonment began, in
contemplation of law, at the date the judgment of court
was rendered. In the course of the opinion rejecting this
view, after a discriminating investigation of the authorities,
the court said: "Suppose a court in this state sentences a
person convicted of criminal offense to work in the chain
gang for twelve months, without attempting to suspend the
execution of the sentence, and the sheriff, in disregard of
his duty, and on his own motion, immediately discharges the
prisoner, and allows him to have unrestricted liberty for a
year or longer; can it be held, after he has enjoyed twelve
months of perfect but unlawful freedom, that he has, in con-
templation of law, worked in the chain gang for the full
term for which he was sentenced? We apprehend not.
What difference can it make whether the sheriff discharges
the sentenced criminal unlawfully on his own motion, or
discharges him unlawfully under a void order of the court?"
In *Ex parte Vance*, 90 Cal. 208 (27 Pac. Rep. 209, 13 L.
R. A. 574), the prisoner was sentenced to imprisonment un-
til a fine was paid, and thereafter released by the sheriff
without legal authority. When re-arrested after the lapse
of the period fixed, he insisted that, as judgment had not
been suspended, the term of his imprisonment had expired.
But the court declared, "The act of the sheriff in releasing
the petitioner was unauthorized , and the petitioner's depart-
ure from the jail to which he had been lawfully committed,
without having been discharged in due course of law, was
equally so, and was, in effect, a technical escape, from which
he can derive no advantage. The time of the petitioner's
absence from jail cannot be considered as having been spent
in jail in satisfaction of the judgment which required his
actual imprisonment." In *State v. Cockerham*, 24 N. C.
204, the prisoner had been sentenced to be imprisoned two
calendar months from and after November 1st, but did not

go to prison accordingly. Direction at a subsequent term of court, more than the period fixed later, that the judgment be executed, was upheld, as the time for the beginning of the sentence was directory only, and formed no part of the judgment. See *Sylvester v. State*, 65 N. H. 193 (20 Atl. Rep. 954); *McKay v. Woodruff*, 77 Iowa, 413. In principle, these authorities fully sustain our conclusion, and it follows that the petitioner was rightly remanded to the custody of the sheriff, to be dealt with as commanded in the judgment of the court.—AFFIRMED.